**<u>PUBLISHED</u>**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1857**

MARLON HALL; JOHN WOOD; ALIX PIERRE; KASHI WALKER,

        Plaintiffs − Appellants,

    and

JOHN ALBRECHT,

        Plaintiff,

      v.

DIRECTV, LLC; DIRECTSAT USA, LLC,

        Defendants – Appellees,

    and

DIRECTV, INC.; DIRECTV HOME SERVICES; DTV HOME SERVICES
II, LLC,

        Defendants.

**No. 15-1858**

JAY LEWIS; KELTON SHAW; MANUEL GARCIA,

        Plaintiffs – Appellants,

and

JUNE LEFTWICH,

        Plaintiff,

    v.

DIRECTV, LLC; DIRECTSAT USA, LLC,

        Defendants – Appellees,

    and

DIRECTV, INC.,

        Defendant.

———————

Appeals from the United States District Court for the District of Maryland, at Baltimore.  J. Frederick Motz, Senior District Judge.  (1:14-cv-02355-JFM; 1:14−cv−03261−JFM)

———————

Argued:  October 27, 2016                 Decided:  January 25, 2017

———————

Before WYNN, FLOYD, and HARRIS, Circuit Judges.

———————

Reversed and remanded by published opinion.  Judge Wynn wrote the opinion, in which Judge Floyd and Judge Harris joined.

———————

**ARGUED:** Larkin E. Walsh, STUEVE SIEGEL HANSON LLP, Kansas City, Missouri, for Appellants.  Colin David Dougherty, FOX ROTHSCHILD LLP, Blue Bell, Pennsylvania, for Appellees.  **ON BRIEF:** George A. Hanson, Kansas City, Missouri, Ryan D. O'Dell, STUEVE SIEGEL HANSON LLP, San Diego,

California, for Appellants. Nicholas T. Solosky, FOX ROTHSCHILD LLP, Washington, D.C., for Appellees.

_____

WYNN, Circuit Judge:

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, requires covered employers to pay their employees both a minimum wage and overtime pay, *id.* §§ 206, 207. In these consolidated cases, two groups of satellite television technicians ("Plaintiffs") allege that DIRECTV and DirectSat (collectively, "Defendants"), through a web of agreements with various affiliated and unaffiliated service providers, jointly employed Plaintiffs,[1] and therefore are jointly and severally liable for any violations of the FLSA's substantive provisions. *See* 29 C.F.R. § 791.2(a).

The district court dismissed Plaintiffs' action on the pleadings, holding that Plaintiffs failed to adequately allege that DIRECTV and DirectSat jointly employed Plaintiffs. In so doing, the district court relied on out-of-circuit authority that we have since rejected as unduly restrictive in light of the broad reach of the FLSA. Analyzing Plaintiffs' allegations under the legal standard adopted by this Circuit and construing those allegations liberally, as we must when ruling on a motion to dismiss, *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015), we conclude that Plaintiffs' factual allegations state a claim under the FLSA. Accordingly, we reverse.

---

[1] As explained in greater detail below, *infra* Part I.A., Plaintiffs each bring a claim under the FLSA against Defendant DIRECTV, with two Plaintiffs bringing a parallel claim against Defendant DirectSat. For purposes of clarity, the allegations set out in the Amended Consolidated Complaint are attributed to all Plaintiffs.

4

I.

A.

Plaintiffs appeal from an order granting Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Accordingly, we recount the facts as alleged by Plaintiffs, accepting them as true and drawing all reasonable inferences in Plaintiffs' favor. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

As the nation's largest satellite television provider, DIRECTV engages thousands of technicians to install and repair satellite systems for customers throughout the country. In addition to employing some technicians directly, DIRECTV controls and manages many technicians through the DIRECTV "Provider Network." J.A. 93. According to the Amended Consolidated Complaint ("Complaint"), this network is organized as a pyramid, with DIRECTV contracting with certain intermediary entities known as "Home Service Providers" and "Secondary Service Providers." J.A. 93–94. These intermediary entities generally contract with "a patchwork of largely captive entities"—referred to in the Complaint as "subcontractors"—which in turn contract directly with individual technicians throughout the country. J.A. 94.

Following DIRECTV's acquisition of numerous Home and Secondary Service Providers, Defendant DirectSat was one of three "independent" Home

5

Service Providers remaining in the DIRECTV Provider Network at the time this action was initiated.[2]  In this capacity, DirectSat served as a middle-manager between DIRECTV and individual technicians who contracted directly with DIRECTV, as well as between DIRECTV and various subcontractors that hired individual technicians.  Specifically, DirectSat, like the other Home and Secondary Service Providers, implemented and enforced DIRECTV's hiring criteria for technicians, relayed scheduling decisions from DIRECTV to technicians using DIRECTV's centralized work-assignment system, and otherwise supervised technicians under its purview.  DirectSat also maintained a "contractor file" for each of its technicians, which Plaintiffs describe as "analogous to a personnel file" and which were "regulated and audited by DIRECTV."  J.A. 94–95.  And, in accordance with its agreement with DIRECTV, DirectSat required technicians to obtain DIRECTV equipment and attend DIRECTV-mandated trainings at DirectSat facilities.

Each Plaintiff alleges that, between 2007 and 2014, he worked as a technician for DIRECTV, an intermediary provider, a subcontractor, or some combination of those entities.  Plaintiffs Lewis and Wood allege that they were employed by DirectSat, while the five remaining Plaintiffs allege that they worked

---

[2] Plaintiffs allege that DIRECTV "regularly infuses these [providers] with what it labels internally as 'extraordinary advance payments'" and frequently acquires providers when "litigation or other circumstances" present a potential business risk for DIRECTV.  J.A. 97.

6

for other providers not named as defendants in this action. During their respective periods of employment, Plaintiffs were each generally classified by their employer or employers as an independent contractor.[3] In all instances, each Plaintiff's principal job duty was to install and repair DIRECTV equipment.

Regardless of the identity of Plaintiffs' nominal employers, DIRECTV primarily directed and controlled Plaintiffs' work. In particular, Plaintiffs allege that DIRECTV was the "primary, if not the only" client of each of the providers who served as Plaintiffs' direct employers and was the "source of substantially all of each [p]rovider's income." J.A. 93–94. At the same time, DIRECTV dictated nearly every aspect of Plaintiffs' work through its agreements with the various providers that directly employed technicians. Among other provisions, these agreements required that all technicians—and therefore Plaintiffs—pass pre-screening checks and background checks, review training materials published by DIRECTV, and become certified by the Satellite Broadcasting & Communications Association. The agreements likewise required technicians to purchase and wear DIRECTV shirts, carry DIRECTV identification cards, and display the DIRECTV logo on their vehicles. Those who did not satisfy DIRECTV's eligibility requirements could not carry out a technician's primary task: installing and repairing DIRECTV satellite equipment.

---

[3] Plaintiff Hall was initially classified as a direct employee of a provider in August 2009, but was reclassified as an independent contractor in November 2011.

In addition to these eligibility requirements, DIRECTV, through its provider agreements, required technicians to receive their work assignments through a centralized system operated by DIRECTV. DIRECTV also mandated that technicians check in with DIRECTV before and after completing each assigned job, conduct installations and repairs strictly according to DIRECTV's standardized policies and procedures, and interact with DIRECTV employees to activate satellite television service during each installation. The provider agreements also authorized DIRECTV employees to exercise quality control oversight over technicians, categorizing technicians' work as either compensable or noncompensable and imposing various compensation-related penalties for unsatisfactory service. Finally, the provider agreements allowed DIRECTV to effectively terminate technicians by ceasing to assign them work orders through the company's centralized work-assignment system.

## B.

Claiming that they each regularly worked in excess of forty hours per week without receiving overtime pay while serving as DIRECTV technicians, Plaintiffs initiated this action in November 2013.[4] Specifically, Plaintiffs alleged that

_____

[4] Plaintiffs pursued their overtime and minimum wage claims, either collectively or individually, in various federal jurisdictions before their claims were ultimately transferred to and consolidated in the United States District Court for the District of Maryland. *Hall v. DIRECTV*, Nos. JFM-14-2355, JFM-14-3261, 2015 WL 4064692, at *1 n.2 (D. Md. June 30, 2015). In each instance in which

8

Defendants qualified as their joint employers during the relevant period, such that Defendants' failure to provide overtime pay for these additional hours violated the FLSA's overtime and minimum wage requirements. In addition to their claims under the FLSA, Plaintiffs allege that Defendants violated three Maryland wage and hour statutes: (1) the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*; (2) the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.*; and (3) the Maryland Workplace Fraud Act, Md. Code Ann., Lab. & Empl. §§ 3-901 *et seq.*

Defendants each moved to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On June 30, 2015, the district court granted Defendants' motions and dismissed Plaintiffs' claims in their entirety. *See Hall v. DIRECTV*, Nos. JFM-14-2355, JFM-14-3261, 2015 WL 4064692, at *1 (D. Md. June 30, 2015).

In so doing, the district court devised and applied a two-step inquiry to determine whether Plaintiffs alleged a plausible FLSA joint employment claim. The court reasoned that the "first question that must be resolved is whether an individual worker is 'an employee'" of each putative joint employer within the meaning of the statute. *Id.* at *2. Only if Plaintiffs qualified as employees—and not independent contractors—could the court reach what it deemed the second step

they were previously considered, Plaintiffs' claims were dismissed without prejudice. *Id.*

of the inquiry: "whether an entity other than the entity with which the individual [plaintiff] had a direct relationship is a 'joint employer' of [the plaintiff]." *Id.*

The district court looked to *Schultz v. Capital International Securities Inc.*, 466 F.3d 298 (4th Cir. 2006), to determine whether a worker qualifies as an "employee" within the meaning of the FLSA. *Hall*, 2015 WL 4064692, at *2. *Schultz*, relying on *United States v. Silk*, 331 U.S. 704 (1947), applied six factors to determine whether a worker falls within the definition of an "employee" under the FLSA and, thus, benefits from the statute's protections. *Schultz*, 466 F.3d at 304– 05. These factors include: "(1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business." *Id.* (citing authorities).

Apparently assuming that Plaintiffs were not purely independent contractors outside of the FLSA's scope, the district court went on to consider whether DIRECTV was Plaintiffs' "joint employer" for purposes of the FLSA. *Hall*, 2015 WL 4064692, at *2. In doing so, the district court employed a four-factor test originally set forth by the Ninth Circuit in *Bonnette v. California Health and*

10

*Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). *See Hall*, 2015 WL 4064692, at \*2; *see also Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 413 (D. Md. 2013). Under this test, the district court considered whether DIRECTV: (1) had the power to hire and fire the employee; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Hall*, 2015 WL 4064692, at \*2.

Courts applying the *Bonnette* test, including the *Bonnette* Court itself, have emphasized that no single factor is dispositive in determining whether a particular entity qualifies as a joint employer. *Bonnette*, 704 F.2d at 1470; *see also Skrzecz v. Gibson Island Corp.*, No. CIV.A. RDB-13-1796, 2014 WL 3400614, at \*7 (D. Md. July 11, 2014). Nonetheless, while acknowledging that Plaintiffs "alleged facts sufficient to show that DIRECTV at least indirectly supervised [Plaintiffs'] work and directly controlled their schedules," the district court dismissed this arrangement as "not surprising" in light of DIRECTV's interest in maintaining its goodwill with consumers. *Hall*, 2015 WL 4064692, at \*2. Instead, the district court observed that the "ultimate test of employment is the hiring and firing of employees and the setting of their compensation amounts." *Id.* Reasoning that Plaintiffs failed to allege that DIRECTV directly hired or fired technicians working for its providers or otherwise controlled those technicians' compensation, the

11

district court concluded that the Complaint did not allege facts sufficient to establish that DIRECTV jointly employed Plaintiffs. *Id.*

Seeking to bolster this conclusion, the district court identified as relevant other considerations untethered to both the standard articulated in *Bonnette* and the similar standard applied by the district court itself. Specifically, the court posited that "if the entities that were part of the [DIRECTV] Provider System were undercapitalized and merely charades created by DIRECTV that followed every suggestion and payment decision made by DIRECTV, that would show, *perhaps* conclusively, DIRECTV's joint employer status." *Id.* (emphasis added). However, because "nothing . . . implie[d] that the companies in the DIRECTV Provider Network were undercapitalized or slavishly followed every suggestion made by DIRECTV in regard to the status and method of payment of the technicians with whom they had a relationship[,]" the district court concluded that Plaintiffs failed to state a claim. *Id.* Instead, the district court found that Plaintiffs' allegations "show[ed] only that DIRECTV adopted a reasonable business model that allowed for the decentralization of decision-making authority regarding the employment of technicians who install its equipment." *Id.* According to the district court, such a "reasonable business model" did not support a finding of joint employment for purposes of the FLSA. *Id.*

12

Having found that Plaintiffs failed to state an actionable FLSA claim against DIRECTV, the district court summarily concluded that Plaintiffs' claims under the Maryland wage and hour statutes also failed. *Id.* at *3. Specifically, the district court observed that the definitions of "employer" embraced by the Maryland wage and hour statutes were either coextensive with or narrower than that set forth under the FLSA. *Id.* As such, just as DIRECTV did not qualify as Plaintiffs' joint employer under the FLSA, the district court reasoned that the company could not be held liable as a joint employer in connection with Plaintiffs' state law claims. *Id.* This timely appeal followed.

## II.

We review *de novo* the district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *E.I. du Pont de Nemours*, 637 F.3d at 440. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff. *E.I. du Pont de Nemours*, 637 F.3d at 440; *see also Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 505 (4th Cir. 1998) (explaining that federal "pleading standards require the complaint be read liberally in favor of the plaintiff").

13

To survive a motion to dismiss, Plaintiffs' factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although it is true that "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Wright*, 787 F.3d at 263 (internal quotation marks and citations omitted). Thus, we have emphasized that "a complaint is to be construed liberally so as to do substantial justice." *Id.*

Under this standard, we reverse the district court's dismissal of Plaintiffs' claims for two reasons. First, the district court applied an improper legal test for determining whether entities constitute joint employers for purposes of the FLSA. Second, the district court misapplied the plausibility standard set forth in *Twombly* and *Iqbal* by subjecting Plaintiffs to evidentiary burdens inapplicable at the pleading stage and by failing to credit key factual allegations regarding Defendants' control and oversight of Plaintiffs' work as DIRECTV technicians. As explained below, when considered under the appropriate joint employment test

14

and the proper standard for Rule 12(b)(6) motions, Plaintiffs' factual allegations plausibly demonstrate that DIRECTV and DirectSat jointly employed Plaintiffs during the relevant period.

III.

The Department of Labor regulation implementing the FLSA distinguishes "separate and distinct employment" from "joint employment." 29 C.F.R. § 791.2(a). "Separate employment" exists when "all the relevant facts establish that two or more employers are acting entirely independently of each other and are completely disassociated with respect to the" individual's employment. *Id.* By contrast, "joint employment" exists when "employment by one employer is not completely disassociated from employment by the other employer(s)." *Id.* When two or more entities are found to jointly employ a particular worker, "all of the employee's work for all of the joint employers during the workweek is considered as *one employment* for purposes of the [FLSA]." *Id.* (emphasis added). Thus, for example, all hours worked by the employee on behalf of each joint employer are counted together to determine whether the employee is entitled to overtime pay under the FLSA. *Id.*

Notwithstanding the regulation's seemingly straightforward language, courts have long struggled to articulate a coherent test for distinguishing separate employment from joint employment. As we have explained, much of this

15

confusion stems from the Ninth Circuit's decision in *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983). *Salinas v. Commercial Interiors, Inc.*, No. 15-1915, slip op. at 17–18 (argued Oct. 27, 2016). *Bonnette* drew on common-law agency principles, as well as the test used to address the distinct question of whether a particular worker is an employee or independent contractor, to adopt a multifactor test purporting to differentiate separate employment from joint employment by focusing on a putative joint employer's right to control an FLSA plaintiff's work. 704 F.2d at 1470. The court identified four nonexclusive factors to guide this inquiry: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.*

Following *Bonnette*, a number of courts, including district courts within this Circuit, have applied this four-factor test to determine whether two or more entities constitute joint employers under the FLSA. *Salinas*, No. 15-1915, slip op. at 18–19 (collecting cases). At the same time, however, several circuits (including the Ninth Circuit, itself) have liberalized the *Bonnette* test to reflect Congress's original intent for the FLSA to extend protections beyond common-law employment relationships. *Id.* at 19–20. As a result, at the time the district court considered Defendants' motions to dismiss in this case, courts in various

16

jurisdictions within this Circuit and throughout the country applied numerous, distinct, multifactor joint employment tests.[5]  *Id.*

Perhaps reflecting this uncertain state of the law, the district court's review of Plaintiffs' joint employment allegations in this case is somewhat disjointed.  As discussed above, *supra* Part I.B., the district court began its analysis by proposing an analytical framework under which it would first decide whether Plaintiffs fell within the FLSA's definition of "employee."  *Hall*, 2015 WL 4064692, at *2. Apparently assuming, without analysis, that Plaintiffs were employees within the FLSA's scope, the court went on to consider whether Defendants qualified as Plaintiffs' joint employers under the statute.  *Id.*  Applying the four-factor *Bonnette* test, the district court concluded that Plaintiffs failed to plausibly allege that Defendants were their joint employers during the relevant period.  *Id.*

The district court's analysis of Plaintiffs' joint employment claims suffers from two basic flaws.  First, the district court errantly concluded that a worker must be an employee—as opposed to an independent contractor—as to *each* putative joint employer when considered separately for the entities to constitute joint employers under the FLSA.  As a result of this misinterpretation, the district court incorrectly treated a worker's status as an employee or independent

---

[5] Notably, in another FLSA action, the trial judge in this case applied a five-factor joint employment test that differed from the *Bonnette*-based test that he applied in this case, notwithstanding that the two cases were decided only a few months apart. *See Salinas*, No. 15-1915, slip op. at 9–10.

contractor as to each putative joint employer as a threshold inquiry to be decided prior to determining whether the two entities are completely disassociated. Second, the district court improperly relied on *Bonnette* to determine whether Defendants jointly employed Plaintiffs, leading the court to ignore important, relevant aspects of Plaintiffs' employment arrangement during their respective tenures as DIRECTV technicians.[6] We discuss each of these errors in turn.

## A.

First, the district court's treatment of whether Plaintiffs were employees—as opposed to independent contractors—of DIRECTV and DirectSat as a threshold question inverted the two-step inquiry we have adopted in FLSA joint employment cases.

We addressed the proper order of analysis in FLSA joint employment actions in *Schultz*. There, we established a two-step framework for determining whether a defendant may be held liable for an alleged FLSA violation under a joint employment theory. 466 F.3d at 305–09. Under this framework, we first must determine whether the defendant and one or more additional entities shared, agreed

---

[6] As previously described, despite its recitation of the *Bonnette* factors, the district court's analysis turned largely on its misapprehension of Plaintiffs' allegations regarding the degree to which Defendants maintained the authority to hire and fire or otherwise set the rate of compensation for DIRECTV technicians like Plaintiffs. In this sense, even assuming that the *Bonnette*-like test applied by the district court was the appropriate joint employment test, the district court's dismissal of Plaintiffs' overtime claims was in error.

18

to allocate responsibility for, or otherwise codetermined the key terms and conditions of the plaintiff's work. *Id.*; *Salinas*, No. 15-1915, slip op. at 29–31. The second step of the analysis—which asks whether a worker was an employee or independent contractor for purposes of the FLSA—depends in large part upon the answer to the first step. Namely, if we determine that the defendant and another entity codetermined the key terms and conditions of the worker's employment, then we must consider whether the two entities' *combined* influence over the terms and conditions of the worker's employment render the worker an employee as opposed to an independent contractor. By contrast, if the two entities are disassociated with regard to the key terms and conditions of the worker's employment, we must consider whether the worker is an employee or independent contractor with regard to *each* putative employer separately.

In adopting this framework, we explained that the joint employment doctrine is premised on the theory that, when two or more entities jointly employ a worker, the worker's entire "employment arrangement must be viewed as 'one employment' for purposes of determining whether the [worker was an] employee[] or independent contractor[] under the FLSA." *Schultz*, 466 F.3d at 307 (quoting 29 C.F.R. § 791.2(a)). In other words, if a worker performs work for two or more entities that are "not completely disassociated" with respect to that worker's employment, 29 C.F.R. § 791.2(a), courts must aggregate the levers of influence

19

over the key terms and conditions of the worker's employment exercised by *all* of the entities when determining whether the worker is an "employee" within the meaning of the FLSA. Accordingly, the district court in this case erred by considering whether Plaintiffs qualified as employees "without first determining whether a joint employment relationship existed" between DIRECTV, DirectSat, and Plaintiffs' other putative joint employers.[7] *Schultz*, 466 F.3d at 309.

Focusing first on the relationship between putative joint employers is essential to accomplishing the FLSA's "remedial and humanitarian" purpose. *Purdham v. Fairfax Cty. Sch. Bd.*, 637 F.3d 421, 427 (4th Cir. 2011) (internal quotation marks omitted) (quoting *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)). Indeed, a worker who performs services for two or more entities that are "not completely disassociated" with respect to his work may not amount to an "employee" protected by the FLSA when his relationship to each entity is considered separately, but may come within the statutory definition of an "employee" when his relationships to all of the relevant entities are considered in the aggregate. By ignoring the relationships *between* and *among* these entities vis-à-vis the worker, the framework deployed by the district

---

[7] *Schultz* acknowledged that in a small subset of cases this sequence of analyses may be unnecessary, 466 F.3d at 306 n.1, such as when the levers of influence over the essential terms and conditions of an individual's work exercised by putative joint employers would not give rise to an employer-employee relationship, regardless of whether the putative joint employers' levers of influence are considered in the aggregate.

court erroneously failed to take account of a worker's *entire* employment when considering whether he or she is covered by the FLSA.  This approach departs from the framework we set forth in *Schultz* and risks creating significant gaps in the broad, protective coverage Congress sought to ensure in adopting the FLSA.

Although our two-step test will, consistent with congressional intent, extend FLSA protection to individuals who are independent contractors when their work for each entity is considered separately but employees when their work is considered in the aggregate, it will not automatically render every independent contractor who performs services for two or more entities an "employee" within the FLSA's scope.  Rather, under this two-step inquiry, individuals who bear true hallmarks of independent contractor status will remain outside of the FLSA's scope even if they perform work for two or more entities that are "not completely disassociated" with respect to those individuals' work. For instance, two businesses agreeing to share the services of a single handyman may not be "completely disassociated" when they arrange for the handyman to perform services on their premises at mutually acceptable times. But, if the handyman owns his own tools and provides his own materials, can choose to stop working for either or both businesses of his own accord, and is not an integral part of either business's principal purpose, he may nonetheless remain an independent contractor for purposes of the FLSA.  Accordingly, the businesses, despite their incomplete

21

disassociation, would have no obligations under the FLSA with respect to the handyman.[8]

Through properly segregating and organizing these two distinct questions, the analytical framework we embraced in *Schultz* "leads to a proper determination of whether, as a matter of economic reality, the [plaintiffs] were dependent on the joint employers or whether they were in business for themselves." 466 F.3d at 307. By contrast, by inverting that framework, the district court in this case failed to consider whether Defendants' shared influence over Plaintiffs' day-to-day work rendered Plaintiffs economically dependent on DIRECTV and DirectSat during their respective periods of employment, such that Plaintiffs constituted "employees" under the FLSA.

B.

1.

Although the district court's inversion of the two-step *Schultz* framework alone would warrant reversal, the district court compounded its error by relying on *Bonnette* to consider the sufficiency of Plaintiffs' joint employment allegations.

---

[8] By the same token, a business that is deemed a joint employer under the FLSA as to *some* of its workers will not automatically be required to comply with the FLSA with respect to *all* of its workers. Some workers may be independent contractors ineligible for FLSA protection even though they perform services for the defendant and at least one other entity that is "not completely disassociated" with respect to the plaintiff's work.

We recently joined many of our sister circuits in concluding that the *Bonnette* Court's reliance on common-law agency principles ignores Congress's intent to ensure that the FLSA protects workers whose employment arrangements do not conform to the bounds of common-law agency relationships. *Salinas*, No. 15-1915, slip op. at 21. In instructing district courts not to follow *Bonnette*, we emphasized two additional concerns with existing joint employment tests. *Id.* Specifically, we explained that these tests: "(1) improperly focus on the relationship between the employee and putative joint employer, rather than on the relationship between the putative joint employers, and (2) incorrectly frame the joint employment inquiry as solely a question of an employee's 'economic dependence' on a putative joint employer." *Id.*

With this in mind, instead of adopting a previously existing test, we articulated a new standard that draws on the history and purpose of the FLSA, as well as the Department of Labor regulation that implements the statute and recognizes the existence of joint employment arrangements. *Id.* at 30–32. Under our framework, the "fundamental question" guiding the joint employment analysis is "whether two or more persons or entities are 'not completely disassociated' with respect to a worker such that the persons or entities share, agree to allocate responsibility for, or otherwise codetermine—formally or informally, directly or

23

indirectly—the essential terms and conditions of the worker's employment." *Id.* at 31.

To assist lower courts in determining whether the relationship between two entities gives rise to joint employment, we identified the following six, nonexhaustive factors to consider:

(1)    Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the ability to direct, control, or supervise the worker, whether by direct or indirect means;

(2)    Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to— directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;

(3)    The degree of permanency and duration of the relationship between the putative joint employers;

(4)    Whether through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

(5)    Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

(6)    Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Id.* at 31–32. Further, because the status of a particular employment relationship is highly fact-dependent, we emphasized that the absence of a single factor—or even a majority of factors—is not determinative of whether joint employment does or does not exist. *Id.* at 32–33.

Much like its misapplication of the two-step framework set forth in *Schultz*, the district court's reliance on the *Bonnette* factors in this case rendered the court's consideration of Plaintiffs' joint employment allegations fundamentally flawed and unduly restrictive.[9] In particular, the district court's control-based analysis omitted consideration of the relationship between the putative joint employers and thus ignored important elements of coordination between Defendants, as well as many of Defendants' shared levers of influence over Plaintiffs' work as DIRECTV technicians. Because the district court applied an improper test in determining whether Plaintiffs were "separate[ly]" or "joint[ly]" employed, the court erred in granting Defendants' motions to dismiss.

2.

Beyond this initial error, we also reject the district court's assertion that an FLSA defendant, like DIRECTV, that does not directly employ a plaintiff is subject to joint employment liability only if the plaintiff's direct employer

---

[9] Given the confused state of FLSA joint employment case law—and that this Court had not yet identified factors for courts to consider in distinguishing separate employment from joint employment at the time the district court rendered its decision—this error is more than understandable.

25

"slavishly followed *every* suggestion made by [the defendant] in regard to the status and method of payment of the [plaintiff]." *Hall*, 2015 WL 4064692, at *2 (emphasis added). As we explained previously, to determine whether "separate" or "joint" employment exists, courts must focus on whether putative joint employers "*share*, *agree to allocate responsibility for*, or otherwise *codetermine*" the essential terms and conditions of a worker's employment. *Salinas*, No. 15-1915, slip op. at 4 (emphasis added). Accordingly, the FLSA does not require that an entity have unchecked—or even primary—authority over all—or even most—aspects of a worker's employment for the entity to qualify as a joint employer. Rather, the entity must only play a role in establishing the key terms and conditions of the worker's employment.

For this reason, we further reject the district court's conclusion that for joint—as opposed to separate—employment to exist, a majority of factors must weigh in favor of joint employment. *Hall*, 2015 WL 4064692, at *2 (finding no joint employment under the four-factor *Bonnette* test, notwithstanding that Plaintiffs "alleged facts sufficient to show that DIRECTV at least indirectly supervised their work and directly controlled their schedules," because the remaining three factors weighed in favor of separate employment). The Department of Labor's regulation implementing the joint employment doctrine requires that the "determination of whether the employment by the employers is to

26

be considered joint employment or separate and distinct employment for purposes of the [FLSA] depends upon *all the facts in the particular case*." 29 C.F.R. § 791.2(a) (emphasis added). To that end, the nonexclusive factors we have identified to guide the first step of the joint employment inquiry "offer[] a way to think about [whether entities are joint or separate employers,] not an algorithm." *Reyes v. Remington Hybrid Seed Co.*, 495 F.3d 403, 408 (7th Cir. 2007). Accordingly, "toting up a score is not enough." *Id.* Rather, "one factor alone"—such as DIRECTV's supervision and control of Plaintiffs' schedules—can give rise to a reasonable inference that plaintiffs will be able to develop evidence establishing "that two or more persons or entities are 'not completely disassociated' with respect to a worker's employment if the [allegations] supporting that factor demonstrate that the person or entity has a substantial role in determining the terms and conditions of a worker's employment." *Salinas*, No. 15-1915, slip op. at 32–33.

This is particularly true at the pleading stage, when plaintiffs have had no "opportunity for discovery as to payroll and taxation documents, disciplinary records, internal corporate communications, or leadership and ownership structures." *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 145 (3d Cir. 2014); *see also Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 961 (8th Cir. 2015) (holding that, at the pleading stage, plaintiffs relying on a joint employer

27

theory are "not required to determine conclusively which [defendant] was their employer . . . or describe in detail the employer's corporate structure").

We likewise reject the district court's suggestion that an FLSA plaintiff may hold a defendant that does not directly employ the plaintiff liable as a joint employer only if the plaintiff alleges that his direct employer was "undercapitalized" and that the arrangement between the defendant and the direct employer was a "mere[] charade[]." *Hall*, 2015 WL 4064692, at *2. To be sure, "facts demonstrating that two entities jointly engaged in a bad faith effort to evade compliance with the FLSA . . . will provide strong evidence that the entities are 'not completely disassociated' with respect to that worker's employment." *Salinas*, No. 15-1915, slip op. at 39. But bad faith is not a precondition to liability as a joint employer. *Id.* at 39–40.

Additionally, even if allegations of bad faith were required—which they are not—Plaintiffs explicitly allege that the DIRECTV Provider Network was "*purposefully designed* to exercise the right of control over DIRECTV's technician corps while avoiding the responsibility of complying with the requirements of the FLSA." J.A. 97 (emphasis added). Thus, the challenged employment scheme "ensure[s] [that] DIRECTV controls its technicians' work, while *deliberately disclaiming* their status as employees under state and federal employment laws." *Id.* at 101 (emphasis added). The district court improperly failed to credit these

28

allegations of bad faith—despite the requirement that it do so in ruling on a motion to dismiss under Rule 12(b)(6)—in dismissing Plaintiffs' claim.

## C.

The district court's errors notwithstanding, we may affirm the disposition of Defendants' motions to dismiss "on any grounds supported by the record, notwithstanding the reasoning of the district court." *Tankersley v. Almand*, 837 F.3d 390, 395 (4th Cir. 2016) (internal quotation marks omitted). Accordingly, to determine whether reversal is warranted in this case, we must consider whether, applying the appropriate legal standards, Plaintiffs' allegations are sufficient to state a plausible FLSA joint employment claim against Defendants.

## 1.

As previously explained, to determine whether Plaintiffs have alleged a plausible FLSA joint employment claim, we must first consider whether—taking Plaintiffs' allegations, and all reasonable inferences therefrom, as true— Defendants were "entirely independent" with respect to Plaintiffs' work as DIRECTV technicians, 29 C.F.R. § 791.2(a), or, instead, codetermined the essential terms and conditions of that work, *Salinas*, No. 15-1915, slip op. at 30. Analyzing this fundamental question using the six factors set forth above to guide our inquiry, we conclude that Plaintiffs' factual allegations establish that

DIRECTV, DirectSat, and other members of the DIRECTV Provider Network jointly determined the key terms and conditions of Plaintiffs' employment.

To begin with, Plaintiffs allege that DIRECTV, DirectSat, and the other Home and Secondary Service Providers instituted and operated a fissured employment scheme, governed by a web of provider agreements, that endured throughout Plaintiffs' periods of employment as DIRECTV technicians and was essential to the installation and repair of DIRECTV's own products. DIRECTV was the principal—and, in many cases, only—client of the lower-level subcontractors, and DIRECTV often infused capital into or formally "absorb[ed]" the subcontractors when necessary. J.A. 97.

Moreover, according to the Complaint, DIRECTV and DirectSat allocated, through provider agreements with one another and with subcontractors in the Provider Network, the authority to direct, control, and supervise nearly every aspect of Plaintiffs' day-to-day job duties. For example, through these contractual arrangements, DIRECTV compelled Plaintiffs to obtain their work schedules and job assignments through DIRECTV's centralized system and to follow "particularized methods and standards of installation to assure DIRECTV's equipment is installed according to the dictates of DIRECTV's policies and procedures." J.A. 96. And DIRECTV's provider agreements also allowed the company "to control nearly every facet of the technicians' work," including by

30

requiring Plaintiffs to hold themselves out as representatives of the company, to wear DIRECTV uniforms, to carry DIRECTV identification cards, and to display the company's logo on their vehicles when performing work for the company. J.A. 96–97.

Contrary to the district court's assertion that Plaintiffs failed to allege "facts that would show that DIRECTV has the power to hire and fire technicians [or] determine their rate and method of payment," *Hall*, 2015 WL 4064692, at *2, the Complaint is replete with allegations that DIRECTV, DirectSat, and other members of the Provider Network shared authority over hiring, firing, and compensation. Regarding hiring and firing, the Complaint alleges that "DIRECTV set forth the qualification 'hiring' criteria" for technicians, including Plaintiffs, while DirectSat and other Home and Secondary Service Providers "implemented and enforced those qualifications." J.A. 94. And although Plaintiffs' direct employers had formal firing authority, DIRECTV used its centralized work-assignment system to effectively terminate technicians by ceasing to assign them work.

DIRECTV and members of its Provider Network also shared authority over technicians' compensation. Whereas DirectSat or other subcontractors issued Plaintiffs' paychecks, DIRECTV played an integral role in setting Plaintiffs' compensation. For instance, the Complaint alleges that DIRECTV retained

31

authority in its provider agreements to determine whether work performed by DIRECTV technicians, including Plaintiffs, was "compensable" or "noncompensable." J.A. 100. Plaintiffs characterize this compensation scheme as a "piece-rate" system, through which Plaintiffs were paid a particular rate based on the specific tasks they performed. *Id.* A piece-rate system is permissible under the FLSA only where the parties agree that all of an employee's hours, including nonproductive hours, are compensated and included in the employee's total working time and where the employer continues to comply with the statute's overtime provisions. *See* 29 C.F.R. § 778.318.

In addition to compensable work, Plaintiffs also regularly performed additional tasks that, although essential to the installation and operation of DIRECTV products, went uncompensated by either DIRECTV or its providers. This work included "assembling satellite dishes, driving to and between job assignments, reviewing and receiving schedules, calling customers to confirm installations, obtaining required supplies, assisting other technicians with installations, performing required customer educations, contacting DIRECTV to report in or activate service, working on installations that were not completed, and . . . perform[ing] additional work on installations previously completed." J.A. 103. DIRECTV also retained authority over compensation by imposing "chargebacks and/or rollbacks" on a technician's pay when DIRECTV determined, in its sole

authority, that the technician provided unsatisfactory service. *Id.* at 101. By maintaining authority to determine what work would be deemed compensable and to impose chargebacks, DIRECTV retained significant authority over the manner and method by which Plaintiffs and other technicians were paid for their work.

Regarding DirectSat, Plaintiffs Lewis and Wood assert that the company—in its role as a middle-manager in the DIRECTV Provider Network—implemented DIRECTV's hiring and training criteria, relayed scheduling decisions to DIRECTV technicians, and required technicians to obtain DIRECTV equipment and attend DIRECTV-mandated trainings at its facilities. Moreover, Lewis and Wood allege that DirectSat maintained employment records for all technicians who performed work for the company, which records DIRECTV reviewed and audited.

Of course, later discovery may demonstrate that DIRECTV and DirectSat did not "share, agree to allocate responsibility for, or otherwise codetermine . . . the essential terms and conditions of" Plaintiffs' employment, *Salinas*, No. 15-1915, slip op. at 31, or that neither Lewis nor Wood was employed, either directly or indirectly, by DirectSat. At this stage of the litigation, however, Plaintiffs' allegations are sufficient to make out a plausible claim that DirectSat was "not completely disassociated" from DIRECTV and other service providers with regard to setting the essential conditions under which Plaintiffs Lewis and Wood worked in their capacities as DIRECTV technicians.

33

## 2.

Having established that Plaintiffs' allegations sufficiently demonstrate that DIRECTV and DirectSat were not completely disassociated with respect to Plaintiffs' work as DIRECTV technicians, we now turn to the second step of the joint employment inquiry. In particular, we must consider whether, from the perspective of Plaintiffs' "one employment" with DIRECTV and DirectSat (or other applicable entities within DIRECTV's tiered structure), Plaintiffs have sufficiently alleged that they were employees, as opposed to independent contractors, for purposes of the FLSA. *Schultz*, 466 F.3d at 307. Under the one-employment theory described above, we consider the entire context of Plaintiffs' work on behalf of DIRECTV and DirectSat and aggregate those aspects of that work that Defendants, either jointly or individually, influenced, controlled, or determined. *Id.*

To determine whether Plaintiffs are properly classified as employees or independent contractors under the FLSA, we focus on the "'economic realities' of the relationship" between the defendants and the plaintiffs. *Id.* at 304 (quoting *Henderson v. Inter–Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994)). In particular, we consider whether, in performing their work as DIRECTV technicians, Plaintiffs were "economically dependent" on Defendants or, instead, were "in business for [themselves]." *Id.* at 304. To make this determination, we

look to the six factors identified by the Supreme Court in *United States v. Silk*, 331 U.S. 704 (1947).  These factors include:  "(1) the degree of control that the putative employer[s] ha[ve] over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer[s'] business." *Id.* at 304–05.

With these factors in mind, we conclude that Plaintiffs' allegations demonstrate that Plaintiffs were effectively economically dependent on Defendants while serving as DIRECTV technicians.  As alleged by Plaintiffs, Defendants collectively influenced nearly every aspect of Plaintiffs' work as DIRECTV technicians.  In particular, through its agreements with lower-level providers, DIRECTV largely determined who would be hired as a DIRECTV technician and exclusively determined the manner in which technicians would be compensated for their time.  Although technicians, like Plaintiffs, largely supplied their own tools, DIRECTV provided the materials to be installed for DIRECTV customers and determined whether Plaintiffs' pay for performing particular services would be deducted for any reason previously established by DIRECTV.   Therefore,

35

Plaintiffs could not increase their take-home pay through their own ingenuity or skill.

Through its required training materials and centralized work-assignment system, DIRECTV also dictated the manner in which technicians performed their work and controlled whether and when Plaintiffs could install and repair DIRECTV products. DIRECTV so extensively controlled Plaintiffs' day-to-day—indeed, hour-to-hour—work that the company not only required technicians to use equipment belonging to DIRECTV, but in fact expected technicians to hold themselves out as the company's representatives to customers by wearing DIRECTV uniforms and nametags and driving vehicles emblazoned with DIRECTV's logo. Finally, Plaintiffs' work was integral to DIRECTV's business—absent Plaintiffs' work installing and repairing DIRECTV satellite systems, DIRECTV would be unable to convey its product to consumers.

At the same time, although DirectSat apparently maintained relatively limited authority over the manner in which technicians working under its purview performed their work, Plaintiffs Lewis and Wood allege that the company was responsible for implementing and enforcing many of DIRECTV's mandates for its technicians. As noted, this arrangement endured throughout these Plaintiffs' respective periods of employment as technicians, during which time their installation and repair activities were essential to DIRECTV's provision of satellite

36

television service to its customers. As such, and because we consider Plaintiffs' employment for DIRECTV and DirectSat in the aggregate, these allegations amply demonstrate that Plaintiffs, like other DIRECTV technicians, were economically dependent on DIRECTV and its affiliate providers in connection with their work on the company's behalf. Accordingly, Plaintiffs have stated a plausible claim that DIRECTV—and, as to Plaintiffs Wood and Lewis, DirectSat—was their joint employer under the FLSA and that Plaintiffs were "employees" within the meaning of the FLSA.

*      *      *

In sum, Plaintiffs adequately allege that DIRECTV, DirectSat, and subcontractors in the DIRECTV Provider Network shared responsibility for and codetermined the essential terms and conditions of Plaintiffs' employment as technicians. Plaintiffs' allegations further establish that—when viewed from the perspective of Plaintiffs' "one employment" with DIRECTV, DirectSat, and other subcontractors in the Provider Network—Plaintiffs were economically dependent on—and therefore jointly employed by—DIRECTV and DirectSat. Accordingly, the district court erred in dismissing Plaintiffs' FLSA claims on grounds that Plaintiffs failed to adequately establish joint employment.[10]

---

[10] Defendants agree that Plaintiffs' claims under the Maryland Wage and Hour Law "stand or fall on the success" of their FLSA claims. Appellees' Br. at 37–38 (citing *Turner v. Human Genome Sci., Inc.*, 292 F. Supp. 2d 738, 744 (D.

IV.

Finally, Defendants ask, in the alternative, that we affirm the district court's dismissal of Plaintiffs' FLSA claims on the ground that Plaintiffs fail to articulate a sufficiently detailed accounting of the number of uncompensated hours they

Md. 2003)). Consequently, our resolution of the FLSA joint employment question also resolves Plaintiffs' claims under this parallel Maryland statute.

At the same time, however, Plaintiffs concede that the definitions of "employer" included in the Maryland Workplace Fraud Act and the Maryland Wage Payment and Collection Law are "technically narrower" than the definition embraced by the FLSA. Appellants' Br. at 16 (internal quotations omitted) (quoting *Skrzecz*, 2014 WL 3400614, at \*7 n.7). Because the district court errantly concluded that Plaintiffs failed to adequately allege joint employment for purposes of the FLSA, it did not address whether Defendants constitute "employers" for purposes of the Workplace Fraud Act and Wage Payment and Collection Law. *Hall*, 2015 WL 4064692, at \*3. We remand those claims to the district court to reconsider whether Plaintiffs have stated a claim under the relevant state-law tests and the proper standard for reviewing motions to dismiss under Rule 12(b)(6).

We further note that, in passing upon Plaintiffs' state law claims, the district court incorrectly suggested that the Maryland Wage and Hour Law and Workplace Fraud Act share a common definition of covered "employers," while the state's Wage Payment and Collection Law employs a narrower definition of that term. *See Hall*, 2015 WL 4064692, at \*3. In fact, it is the Workplace Fraud Act and Wage Payment and Collection Law that share a substantially similar definition, which diverges slightly from the definitions included in the FLSA and the analogous Wage and Hour Law. *Compare* 29 U.S.C.A. § 203(d) (FLSA, defining "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ") *and* Md. Code Ann., Lab. & Empl. § 3-401 (Wage and Hour Law, defining "employer" to include "a person who acts directly or indirectly in the interest of another employer with an employee"), *with* Md. Code Ann., Lab. & Empl. § 3-501(b) (Wage Payment and Collection Law, defining "employer" to include "any person who employs an individual . . . or a successor of the person") *and* Md. Code Ann., Lab. & Empl. § 3-901(c) (Workplace Fraud Act, defining "employer" to mean "any person that employs an individual . . . .").

38

worked during their respective periods of employment to state a claim for unpaid overtime wages under the FLSA. Courts are divided as to the level of detail an FLSA overtime claimant must provide to overcome a Rule 12(b)(6) motion to dismiss. *See Butler v. DirectSat USA, LLC,* 800 F. Supp. 2d 662, 667–68 (D. Md. 2011) (summarizing differing approaches). On one hand, a number of lower courts have adopted an approach under which plaintiffs are required to provide an approximation of the number of hours for which they were inadequately compensated to state a plausible overtime claim. *See, e.g.*, *Jones v. Casey's Gen. Stores*, 538 F. Supp. 2d 1094, 1102–03 (S.D. Iowa 2008). Although the precise degree of specificity required under this standard is less than clear, courts have expressed well-founded skepticism of such an unduly demanding pleading standard in overtime cases. *See Butler*, 800 F. Supp. 2d at 668 (noting that, "[w]hile [the d]efendants might appreciate having [the p]laintiffs' estimate of the overtime hours worked . . . , it would be subject to change during discovery and if/when the size of the collective action grows and thus of limited value" at the pleading stage); *see also Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1845 (2015) (observing that "most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants" (citing *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012))).

39

On the other hand, at least three other circuits have adopted a more lenient approach, requiring plaintiffs only to "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013); *Davis v. Abington Mem. Hosp.*, 765 F.3d 236, 241–43 (3d Cir. 2014) (adopting *Lundy* standard); *Landers*, 771 F.3d at 644–45 (same); *see also Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 46–47 (1st Cir. 2013) (applying the *Lundy* standard to conclude that plaintiffs alleged sufficient facts to survive dismissal); *cf. Sec'y of Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008) (per curiam) (unpublished) (reasoning that, given the relative simplicity of FLSA overtime claims, extensive pleading is generally unnecessary and allowing claims to proceed based on allegations that defendant "repeatedly violated stated provisions of the FLSA by failing to pay covered employees minimum hourly wages and to compensate employees who worked in excess of forty hours a week at the appropriate rates").

Reviewing these decisions, we are persuaded to adopt the latter approach. Thus, to make out a plausible overtime claim, a plaintiff must provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his or her employer failed to pay the requisite overtime premium for those overtime hours. Under this standard,

40

plaintiffs seeking to overcome a motion to dismiss must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay. *See Pruell*, 678 F.3d at 13; *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (explaining that the "requirement that plaintiffs must allege overtime without compensation in a 'given' workweek [is] not an invitation to provide an all-purpose pleading template alleging overtime in 'some or all workweeks'").

At the same time, however, we emphasize that the standard we today adopt does not require plaintiffs to identify a *particular* week in which they worked uncompensated overtime hours. Rather, this standard is intended "to require plaintiffs to provide some factual context that will 'nudge' their claim 'from conceivable to plausible.'" *Dejesus*, 726 F.3d at 90 (quoting *Twombly,* 550 U.S. at 570). Thus, to state a plausible FLSA overtime claim, plaintiffs "must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). A plaintiff may meet this initial standard "by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, *or any other facts* that will permit the court to find plausibility." *Landers*, 771 F.3d at 645

41

(emphasis added) (citing *Pruell,* 678 F.3d at 14); *see also Davis*, 765 F.3d at 243 (explaining that "a plaintiff's claim that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of *those* forty-hour weeks, would suffice" (emphasis in original)).

Applying this standard here, we conclude that Plaintiffs' allegations provide a sufficient basis to support a reasonable inference that Plaintiffs worked uncompensated overtime hours while serving as DIRECTV technicians. The gravamen of Plaintiffs' Complaint is that, under DIRECTV's piece-rate compensation system (the terms of which Plaintiffs allege were not properly memorialized, as required by the FLSA), Plaintiffs consistently performed significant work for which they received inadequate compensation. As a result, Plaintiffs assert that, taking into account their total compensation and the number of hours they worked on behalf of Defendants, their final pay "did not reflect compensation for all hours worked and they were not properly compensated for overtime hours." J.A. 104.

As compared to a more traditional overtime claim based on an employee's standard hourly wage, Defendants' alleged piece-rate compensation system presents certain additional complexity under the FLSA. *See* 29 U.S.C. § 207(g) (setting out various methods by which an employer may comply with the statute's

42

overtime provisions under a piece-rate compensation scheme).  At this stage of the litigation, however, we need not wade into these murky waters.  Instead, our consideration of the sufficiency of Plaintiffs' claims must again focus on the degree to which Plaintiffs have alleged that they worked more than forty hours in a workweek and were not properly compensated for those additional hours. *Landers*, 771 F.3d at 645 (applying the *Lundy* standard to consider overtime allegations arising out of an employer's piece-rate compensation system).

In this case, in addition to their common allegations regarding the nature and structure of the DIRECTV Provider Network, Plaintiffs each describe in some detail their regular work schedules, rates of pay, and uncompensated work time. Specifically, each Plaintiff provides an approximation of his general workweek, with each Plaintiff alleging that he typically worked in excess (and, in some cases, well in excess) of forty hours per week.  Supplementing these initial allegations, each Plaintiff further estimates the number of hours he worked in any given week, including a breakdown of the number of compensable and noncompensable hours he typically worked, as well as his average weekly pay and the amount by which this weekly compensation was typically reduced through DIRECTV-imposed penalties and unreimbursed business expenses.

This final level of granularity, coupled with Plaintiffs' common allegations regarding the types of work DIRECTV designated as compensable and

43

noncompensable, ultimately nudges Plaintiffs' claims against Defendants from the merely conceivable to the plausible. At this initial stage, that is all that is required to overcome Defendants' motion to dismiss. *Cf. Landers* 771 F.3d at 646 (dismissing FLSA claims where the complaint lacked "any detail regarding a given workweek when [the plaintiff] worked in excess of forty hours and was not paid overtime for that given workweek and/or was not paid minimum wages"). Although Plaintiffs may ultimately be unable to substantiate their allegations through discovery, they have sufficiently alleged a plausible claim to unpaid overtime for their work on behalf of Defendants.

The district court's summary dismissal of Plaintiffs Wood and Lewis's claims against DirectSat suffers from a similar infirmity.[11] Contrary to the district

---

[11] In disposing of these claims, which are pursued only by Plaintiffs Wood and Lewis, the district court first questioned the sufficiency of these Plaintiffs' allegations regarding when they were employed by DirectSat and suggested, without explanation or citation, that their claims against the company "may be time-barred." *Hall*, 2015 WL 4064692, at *3. In fact, however, Wood and Lewis specifically allege that they worked as satellite technicians for DIRECTV, DirectSat, and other entities until 2011 and 2012, respectively.

In addition to DIRECTV and DirectSat, each of these Plaintiffs indicates that he worked as a DIRECTV satellite technician for at least one other entity during the relevant period, with Plaintiff Lewis indicating that he was involuntarily terminated by an entity called Commercial Wiring Incorporated in December 2012. Importantly, plaintiffs alleging joint employment under the FLSA need not "determine conclusively which [defendant] was their employer at the pleadings stage or describe in detail the employer's corporate structure." *Ash*, 799 F.3d at 961. Rather, at this preliminary stage, it is enough that both Lewis and Wood

court's submission that these Plaintiffs' allegations suggest that they were "paid an amount greater than that required by the FLSA," *Hall*, 2015 WL 4064692, at *3, both Lewis and Wood expressly allege that they regularly performed uncompensated overtime work for Defendants during the course of their employment as DIRECTV technicians.

Though again unsupported by any citation or other reasoning, the district court's suggestion that Plaintiffs Lewis and Wood fail to state a claim because their final pay was "greater than required under the FLSA" suggests a fundamental misapprehension of the statute's requirements. In addition to setting a federal minimum wage, the FLSA separately requires employers to pay their workers an overtime premium for hours worked in excess of forty per week. 29 U.S.C. § 207. For this reason, even assuming Plaintiffs Lewis and Wood each received an effective hourly wage above the minimum rate established by the FLSA, their overtime claims against Defendants are sufficiently pleaded to survive the present motions to dismiss.

V.

Under the appropriate legal standards, Plaintiffs have alleged sufficient facts to make out a plausible claim that Defendants jointly employed them as DIRECTV technicians. As such, Defendants may be held jointly and severally liable in the

---

allege that they worked as DIRECTV technicians for DirectSat during the relevant period to overcome Defendants' motions to dismiss.

event that Plaintiffs performed uncompensated overtime work for Defendants during Plaintiffs' respective periods of employment. Because Plaintiffs have sufficiently pleaded (1) that DIRECTV—and, as to Plaintiffs Lewis and Wood, DirectSat—jointly employed them as satellite technicians and (2) that they are owed some amount of unpaid overtime compensation, we reverse the district court's dismissal of Plaintiffs' FLSA and Maryland state-law claims against Defendants and remand these consolidated cases for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*