**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**August 26, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

FRANKLIN MERRILL; ANTHONY
GLOVER; KEITH HERRING;
ANTHONY DENNIS; LARRY JURCAK;
SAMI NASR; RONALD DENNIS;
RODNEY LACY; JAMES NEWBERRY;
TAMI POTIRALA; CRAIG WILLIAMS;
ZIGMUND GUTOWSKI; JOSEPH
HORION; ERIC ARD; TIM
HOLLINGSWORTH,

      Plaintiff Counter Defendants -
Appellants,

v.

MATTHEW HARRIS,

      Defendants - Appellee,

and

PATHWAY LEASING LLC, a Colorado
limited liability company,

      Defendant Counterclaimant -
Appellee,

and

XPO LOGISTICS TRUCKLOAD, INC., a
Missouri corporation registered to conduct
business in Colorado; TRANSFORCE,
INC., a Canadian corporation; CON-WAY
TRUCKLOAD, INC., a Missouri
corporation registered to conduct business
in Colorado,

      Defendants.

No. 21-1295
(D.C. No. 1:16-CV-02242-KLM)
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, Chief Judge, **CARSON**, and **ROSSMAN**, Circuit Judges.

_____

This appeal involves the Fair Labor Standards Act ("FLSA"), which requires employers to pay their employees a minimum wage. *See* 29 U.S.C. §§ 215(a)(2), 216(b). Plaintiffs are long-haul commercial truck drivers. They leased trucks from Defendants Pathway Leasing LLC and its President, Matthew Harris, (collectively "Pathway" or "Defendants") and then used those trucks to haul freight for carrier companies, including XPO Logistics Truckload, Inc.; CFI, Inc.; and Con-Way Truckload, Inc. (collectively "XPO").[1] Plaintiffs sued Pathway and XPO under the FLSA in federal district court in Colorado, alleging the two entities were joint employers who intentionally misclassified them as independent contractors and unlawfully denied them the statutorily required minimum wage. Plaintiffs voluntarily dismissed XPO from this action before trial, but their FLSA claims proceeded against Pathway.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] XPO Logistics Truckload, Inc.; CFI, Inc.; and Con-Way Truckload, Inc. refer to the same entity. *See, e.g.*, R. vol. 2 at 1232 n.4.

After a multi-day bench trial, the district court entered judgment for Pathway on Plaintiffs' FLSA claims.[2] The district court concluded Plaintiffs were correctly classified as independent contractors—regardless of whether Pathway alone was considered Plaintiffs' employer or XPO and Pathway were joint employers. Plaintiffs timely appealed, challenging the district court's classification decision and the manner in which it was determined. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

### I.     The pretrial proceedings

Plaintiffs' operative complaint, filed in February 2017, alleged five claims for relief against Pathway and XPO, but only Plaintiffs' FLSA minimum wage claims against Pathway are at issue in this appeal.[3] Plaintiffs claimed they leased trucks from Pathway "believing they could operate those trucks as independent contractors and improve their lives through the exercise of entrepreneurial spirit." R. vol. 1 at 63. But in reality, Pathway allegedly "controlled every aspect" of their work, *id.*, structured a

---

[2] All parties consented to the jurisdiction of a United States Magistrate Judge under 28 U.S.C. § 636(c). We will refer to the magistrate judge as the "district court" in our analysis.

[3] The claims alleged were: "Failure to Pay [the] Minimum Wage in Violation of the FLSA" against Pathway and XPO; "Recission or Voiding of Lease Agreements, Warranties or Promissory Notes, and Restitution" against Pathway; "Unjust Enrichment and Restitution" against Pathway; "Quantum Meruit" against Pathway; and "Unlawful Retaliation" in violation of the FLSA against Pathway and XPO. R. vol. 1 at 81-85. The district court entered judgment in Pathway's favor on these claims at trial.

joint employment relationship with XPO "to avoid the expense of retaining employees," and willfully misclassified them as independent contractors, *id.* at 75. The district court conditionally certified Plaintiffs' FLSA collective action in June 2017.[4] A few months later, Plaintiffs voluntarily dismissed XPO from the case.

Plaintiffs then moved for partial summary judgment, contending Pathway and XPO were joint employers under the Fourth Circuit's test in *Hall v. DIRECTV, LLC*, 846 F.3d 757 (4th Cir. 2017), and *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125 (4th Cir. 2017) ("*Hall-Salinas*"). The *Hall-Salinas* framework articulates six factors "[t]o assist lower courts in determining whether the relationship between two entities gives rise to joint employment." *Hall*, 846 F.3d at 769.[5] Pathway opposed

---

[4] A collective action is a suit brought under the FLSA by "any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b); *see also Castaneda v. JBS USA, LLC*, 819 F.3d 1237, 1245 (10th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (May 3, 2016) ("In an FLSA collective action an aggrieved employee can bring a claim against an employer on behalf of himself 'and other employees similarly situated.'") (quoting § 216(b)).

[5] These six non-exhaustive factors include:
(1) "Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the ability to direct, control, or supervise the worker, whether by direct or indirect means;"
(2) "Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;"
(3) "The degree of permanency and duration of the relationship between the putative joint employers;"
(4) "Whether through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;"

summary judgment, agreeing that whether two entities are joint employers for FLSA liability is a legal question but disagreeing that *Hall-Salinas* should answer it. Pathway advocated for application of the "economic realities" test in *Baker v. Flint Engineering & Construction Co.*, 137 F.3d 1436 (10th Cir. 1998), which examines "whether the individual is economically dependent on the business to which he renders service . . . or is, as a matter of economic fact, in business for himself." 137 F.3d at 1440 (alteration in original) (quotation omitted). Regardless of the test applied, Pathway argued, there was no joint employment relationship between it and XPO. Pathway also filed a cross-motion for summary judgment contending Plaintiffs were correctly classified as independent contractors under the FLSA.

The district court denied the cross-motions for summary judgment. The court agreed with the parties that joint employment was a "threshold question in this case." R. vol. 2 at 753 (quotations omitted). If a "fact-finder [determined] that [Pathway] and XPO were joint employers," the district court explained, then evidence "bearing on the relationship between [those two entities] on the one hand and Plaintiffs on the other may be examined to determine whether Plaintiffs were independent contractors or employees." *Id.* at 768 (emphasis omitted).

---

(5) "Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another;" and

(6) "Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work." *Hall*, 846 F.3d at 769-70.

The district court observed "the Tenth Circuit Court of Appeals has not yet articulated the appropriate test to use in making [the joint employment] determination in the FLSA context." *Id.* at 753. In the "absence of binding precedent in this Circuit," *id.*, the district court "agree[d] with Plaintiffs . . . that the test enunciated by the Fourth Circuit in *Hall* and *Salinas* is appropriate and should be used here," *id.* at 758. The court ultimately found disputed issues of material fact precluded resolving the joint employment issue on summary judgment. *Id.* at 765.

In considering Pathway's cross motion, the district court analyzed Plaintiffs' employment classification under *Baker* "as though a joint employer relationship ha[d] been established" between Pathway and XPO. *Id.* at 768. Assuming a joint employment relationship between Pathway and XPO, the district court reasoned, "[was] most favorable to Plaintiffs as the nonmoving party." *Id.* The court examined "all of the evidence bearing on the relationship between [Pathway] and XPO," *id.*, in analyzing Plaintiffs' employment classification but, given conflicting evidence, determined the classification issue also could not be determined on summary judgment, *id.* at 772.

## II.    The bench trial

The case proceeded to a six-day bench trial in June 2018.[6] Plaintiffs called eighteen witnesses, including all named Plaintiffs. Mr. Harris, Pathway's president,

---

[6] Although Plaintiffs' other claims proceeded to trial, our summary of the proceedings focuses only on the record relevant to Plaintiffs' FLSA minimum wage claims.

testified for Pathway. To prevail on their FLSA claims, Plaintiffs needed to prove they were employees of Pathway and misclassified as independent contractors. Plaintiffs proceeded on a theory of joint employment, offering testimony that Pathway and XPO collectively exercised control over their work. Pathway defended against the notion that it was a joint employer with XPO. For example, Mr. Harris testified XPO was not involved in Pathway's formation and that XPO and Pathway did not share office space, bank accounts, or any joint policies. *See* R. vol. 3 at 864, 883. According to Mr. Harris, Pathway was not involved in telling Plaintiffs what type of freight they could haul, what routes to drive when hauling freight, or when to take rest breaks or time off. *See id.* at 917-19. Though Pathway and XPO had executed a carrier agreement, Mr. Harris testified Pathway had also entered into agreements with other carriers. *See id.* at 982.

The district court acknowledged the parties submitted a "lot of evidence" about the relationship between Pathway and XPO, *id.* at 1107, and described the joint-employment question as a "close call," *id.* at 1099. At the conclusion of the bench trial, the district court had yet to decide whether Pathway and XPO were joint employers. After trial, the district court determined "Plaintiffs were independent contractors, regardless of whether Defendant Pathway [was] considered independently as an employer or whether XPO and Defendant Pathway [were] considered collectively as joint employers." R. vol. 2 at 1253.[7]

---

[7] Pathway filed a post-trial motion to decertify Plaintiffs' collective action. The district court granted Pathway's motion, dismissing the thirty opt-in Plaintiffs'

### III.    The district court's post-trial findings of fact and conclusions of law

The district court first described the trial evidence presented about the commercial trucking industry. In general, commercial long-haul truckers could work as company drivers for a commercial freight company or become owner-operators. Owner-operators lease or own their own trucks and sell their hauling services to the companies with whom they contract "as [they] desire[]." R. vol. 2 at 1231. Company drivers work for a specific company and are bound by its polices about when and how to haul freight.

The district court found Plaintiffs were owner-operators who leased trucks from Pathway. To lease a truck, each Plaintiff signed Pathway's "Equipment Lease Agreement." Plaintiffs could execute single-person or team leases. The terms of these fixed lease agreements stated Plaintiffs were responsible for "truck payments, maintenance and repairs, fuel costs, business liability insurance," and paying their own "business-related taxes." *Id.* at 1245.

The district court acknowledged Pathway and XPO had entered into a "Carrier Agreement." The Carrier Agreement generally provided that Pathway would make a lease financing program available to XPO's owner-operators, XPO would "[a]ssist in closing the lease financing arrangement between Pathway and the [owner-operators]," and Pathway would lease trucks to XPO's owner-operators. *See* Supp.

---

FLSA minimum wage claims. The remaining Plaintiffs decided not to move for a new trial.

App. at 73-74. Either entity could terminate the Carrier Agreement with 120 days' notice.

XPO offered Plaintiffs a two-year freight-hauling contract, called a "Contractor Hauling Agreement." XPO required Plaintiffs to secure a lease or own a truck before they could execute a Contractor Hauling Agreement. The contract terms permitted either party to terminate the Contractor Hauling Agreement with ten days' notice. Plaintiffs could drive their trucks individually or hire other drivers to assist in hauling freight for XPO. Several Plaintiffs drove in teams. The Contractor Hauling Agreement required Plaintiffs to supervise anyone they hired.

The district court further found Plaintiffs, as owner-operators, were not subject to the many restrictions XPO imposed on its company drivers. For example, Plaintiffs did not have to comply with "forced dispatch." "Forced dispatch" required company drivers to haul loads at XPO's direction, except in limited circumstances, such as when they were ill. R. vol. 2 at 1240. As owner-operators, Plaintiffs could decline loads for reasons besides illness—including if it would not be profitable for them to haul a particular load. When Plaintiffs accepted a load, they were exposed personally to the risk of monetary loss if the fuel cost exceeded what XPO paid them to transport the load.

Plaintiffs did not need to request or receive permission from XPO—or Pathway—to choose where to drive or which routes to take to their destination. XPO did not require Plaintiffs, unlike its company drivers, to adhere to fueling requirements or abide by XPO's "driver handbook." As owner-operators, Plaintiffs

set their own schedules. And XPO paid its owner-operators an incentive bonus to drive more miles each month. The district court concluded that, despite these differences, "[m]any of the work duties performed by owner-operators were the same as those performed by company drivers." R. vol. 2 at 1235.

At times, Plaintiffs needed to maintain or repair the trucks they leased from Pathway. To cover repair costs Plaintiffs could not otherwise afford, Pathway offered Plaintiffs loans, documented by promissory notes. Some Plaintiffs received little "take-home pay" from XPO after making payments on their notes to Pathway. *Id.* at 1251.

Seven Plaintiffs ultimately completed their leases and purchased trucks from Pathway. Some Plaintiffs also established their own trucking companies. Once drivers completed their leases with Pathway, they had no further interaction with Pathway unless they leased another truck. Plaintiffs who completed their Pathway leases often continued to drive for XPO.

After making these factual findings, the district court addressed the ultimate question—whether Plaintiffs were misclassified as independent contractors under the FLSA. The district court considered each of the six *Baker* factors and found five favored independent contractor status while one was neutral. The district court concluded Plaintiffs were independent contractors, not employees, regardless of whether XPO and Pathway were considered collectively as joint employers. After "[c]onsidering the totality of the circumstances," the district court determined, "Plaintiffs were 'in business for [themselves]'" and therefore "preclude[d] . . . from

10

coverage under the FLSA." R. vol. 2 at 1259-60 (second alternation in original) (quotation omitted).

The district court entered judgment in Pathway's favor on Plaintiffs' FLSA minimum wage claims. This timely appeal followed.

## DISCUSSION

Plaintiffs seek reversal on two grounds. First, Plaintiffs contend the district court erred by failing to decide after trial whether Pathway and XPO were joint employers under the Fourth Circuit's test in *Hall-Salinas*—the framework the court applied at summary judgment—before deciding, under *Baker*, whether Plaintiffs were misclassified as independent contractors. This post-trial legal mistake, Plaintiffs argue, caused the district court to give insufficient attention to the relationship between Pathway and XPO in the classification analysis and yielded clearly erroneous factual findings on some of the *Baker* factors. Second, Plaintiffs challenge the district court's conclusion that they are independent contractors under the FLSA.

We reject both arguments. We discern no error in the district court's post-trial decision to forego a joint employment analysis because the court explicitly assumed, as Plaintiffs contended, that Pathway and XPO were joint employers. Having reviewed the trial record de novo, we affirm the district court's ultimate legal determination that Plaintiffs are independent contractors, not employees, under the FLSA.

## I.　Applicable law and standard of review

An employer-employee relationship is a prerequisite to an FLSA claim. *See* 29 U.S.C. §§ 201-19. The FLSA defines an employee as "any individual employed by an employer," *id.* § 203(e)(1), and "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," *id.* § 203(d). When determining whether an individual is an employee under the FLSA or an independent contractor exempt from its coverage, "our inquiry is not limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor.'" *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994) (quotation omitted), *as modified on denial of reh'g* (Dec. 5, 1994).

Our circuit uses the "economic realities" test in *Baker*, 137 F.3d at 1440, to determine whether a worker should be classified as an employee under the FLSA. *Baker* articulated six factors to guide the classification inquiry:

> (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.

*Id.* (citation omitted); *see also Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1235 (10th Cir. 2018). No factor "in isolation is dispositive; rather, the test is based upon a totality of the circumstances." *Dole v. Snell*, 875 F.2d 802, 805 (10th Cir. 1989) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). Ultimately, the "economic realities of the relationship govern, and 'the focal point is whether the individual is economically dependent on the business to which he renders

12

service . . . or is, as a matter of economic fact, in business for himself.'" *Baker*, 137 F.3d at 1440 (alteration in original) (quotation omitted).

In applying *Baker*'s "economic realities" test, a district court must "make findings of historical facts surrounding the individual's work." *Id.* Then, "drawing inferences from the findings of historical facts, the court must make factual findings with respect to" the six *Baker* factors. *Id.* Finally, "employing the findings [of fact] with respect to the six factors, the court must decide, as a matter of law, whether the individual is an 'employee' under the FLSA." *Id.* (citation omitted).

*Baker* also explains the standards governing appellate review of a classification decision. "In reviewing the district court's decision on appeal, we review the two types of factual findings (findings of historical fact, and findings with respect to the six factors) for clear error." *Id.* at 1441. Clear-error review requires us to "view the evidence in the light most favorable to the district court's ruling" and to "uphold any district court finding that is permissible in light of the evidence." *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1183 (10th Cir. 2009) (quotation omitted); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (citations omitted)). "The burden on appellants to prove clear error . . . is a heavy one." *Stephens Indus., Inc. v. Haskins & Sells*, 438 F.2d 357, 360 (10th Cir. 1971). "We will reverse under the clear error standard only if the district court's finding 'is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction

13

that a mistake has been made.'" *Acosta v. Foreclosure Connection, Inc.*, 903 F.3d 1132, 1134 (10th Cir. 2018) (quotation omitted). We review de novo the "ultimate determination of whether an individual is an employee or an independent contractor" under the FLSA. *Baker*, 137 F.3d at 1441 (citation omitted).

**II.    The district court did not err in foregoing a post-trial joint employment analysis because it assumed, as Plaintiffs contended, Pathway and XPO were joint employers.**

Plaintiffs have consistently maintained XPO and Pathway are joint employers for purposes of liability under the FLSA. In their complaint, Plaintiffs claimed Pathway and XPO, working together, exercised "complete control over the working relationship." R. vol. 1 at 75. Plaintiffs alleged, "Despite [Pathway and XPO] having tried to structure their relationship with Plaintiffs for the purpose of avoiding an employer-employee relationship, the economic realities of the relationship dictate that Plaintiffs are in fact Defendants' employees." *Id.* At the summary judgment stage, the district court agreed joint employment was a "threshold question in this case," R. vol. 2 at 753 (quotations omitted), and then, as Plaintiffs had advocated, analyzed the issue under the Fourth Circuit's test in *Hall-Salinas*.

Under the *Hall-Salinas* framework, a court considers the relationship between a worker's putative joint employers, and then separately considers the worker's relationship to all the putative joint employers in the aggregate. *See Hall*, 846 F.3d at 768. The district court acknowledged our circuit has not adopted *Hall-Salinas*—or any test unique to determining joint employment under the FLSA—but found its application appropriate under the circumstances, particularly absent any contrary

14

circuit precedent. Ultimately, the district court concluded genuine issues of material fact precluded summary judgment on the joint employment issue. After trial, rather than resolving the issue under *Hall-Salinas*, the district court assumed joint employment for purposes of the classification analysis, concluding "Plaintiffs were independent contractors, regardless of whether Defendant Pathway [was] considered independently as an employer or whether XPO and Defendant Pathway [were] considered collectively as joint employers." R. vol. 2 at 1253.

On appeal, Plaintiffs argue the district court erred by failing to engage in a *post-trial* analysis of joint employment using the *Hall-Salinas* framework and ask us to "remand for the lower court to conduct the *Hall-Salinas* test in the first instance." *See* Aplts.' Br. at 15-16, 34. Plaintiffs advance two supporting contentions, which we consider and reject.

First, Plaintiffs contend "had the lower court conducted the *Hall-Salinas* inquiry first, it would have found that Pathway and XPO were joint employers." *Id.* at 16. Plaintiffs proceed from a faulty premise. The district court *did* find that Pathway and XPO were joint employers; it made that assumption before resolving classification under *Baker*. As Pathway correctly observes, "the court addressed the issues in the right sequence. It addressed joint employment first. It simply assumed, rather than decided, that Pathway and XPO were joint employers before addressing whether they had misclassified plaintiffs." Aplees.' Br. at 24. Plaintiffs thus spend considerable time on appeal seeking to win a point they already proved in the district court.

15

Our precedent does not command a district court to address joint employment under *Hall-Salinas*. In our circuit, district courts must apply the "totality-of-the-circumstances" approach in *Baker*, 137 F.3d at 1440 (citation omitted), to determine whether a worker is an independent contractor or an employee under the FLSA. Thus, even if *Hall-Salinas* offers an appropriate test for analyzing whether two entities are joint employers, there was no need, under the circumstances, for the district court to analyze an issue already decided in Plaintiffs' favor.[8]

Second, Plaintiffs insist the threshold legal mistake—assuming a joint employment relationship instead of conducting a joint employment analysis under *Hall-Salinas*—caused the district court to give insufficient attention to the relationship between Pathway and XPO under the *Baker* factors. "[T]he inputs to the six-factor FLSA employee analysis would have changed had the [*Hall-Salinas*] test been conducted first," Plaintiffs contend, so "skipping" the test "was harmful." Aplts.' Br. at 23, 33. We understand this argument to challenge as clearly erroneous the district court's factual findings under the six *Baker* factors. We are not persuaded. The district court appropriately focused on the relationship between Pathway and XPO—and not just on Plaintiffs' relationship to each entity separately—in deciding Plaintiffs were correctly classified as independent contractors.

---

[8] Plaintiffs ask us to adopt the *Hall-Salinas* test, but we decline the invitation in this case. *See Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir. 1991) ("We will not undertake to decide issues that do not affect the outcome of a dispute." (citation omitted)).

As the record squarely confirms, the district court understood the classification analysis in this case required inquiry into the combined influence of Pathway and XPO. At the summary judgment stage, the district court explained that here, where joint employment was a threshold question, evidence "bearing on the relationship between [Pathway] and XPO . . . may be examined to determine whether Plaintiffs were independent contractors or employees." R. vol. 2 at 768. After trial, the district court acknowledged the parties submitted a "lot of evidence" about Pathway and XPO's relationship, R. vol. 3 at 1107, and recognized its obligation "to consider" and "sort through" that evidence and "make a conclusion about [it]," *id.* The district court also remarked "the issue of whether there was joint employment here [was] a close call." *Id.* at 1099. Ultimately, the district court determined Plaintiffs were independent contractors "regardless" of whether XPO and Pathway "are considered collectively as joint employers." R. vol. 2 at 1253.

As we will explain, we agree with Plaintiffs that the district court's analysis of the sixth *Baker* factor—the extent to which the work performed is "integral to the business"—does not fully conform to its assumption that Pathway and XPO were joint employers. But we discern no reversible error because the district court properly ruled, under the totality of the circumstances, Plaintiffs were independent contractors.

### III.   The district court did not err in concluding Plaintiffs were independent contractors, rather than employees, under the FLSA.

Our six-factor test in *Baker* applies to Plaintiffs' misclassification claim. No one factor is dispositive because *Baker* contemplates a "totality-of-the-circumstances

approach." 137 F.3d at 1441 (citation omitted). Recall, we review the district court's factual findings under *Baker* for clear error and its ultimate classification decision de novo. *Id.* "The existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts—whether workers are employees or independent contractors—is a question of law." *Dole*, 875 F.2d at 805 (quotation omitted).

Plaintiffs contend the district court erred in finding they were not employees of Pathway.[9] According to Plaintiffs, every *Baker* factor supports employee status under the FLSA. Pathway responds that the district court's findings under *Baker* are not clearly erroneous and that, under the totality of the circumstances, the district court correctly concluded Plaintiffs were properly classified as independent contractors. As we will explain, Plaintiffs successfully challenge some components of the district court's *Baker* analysis, but a proper application of the standard of review compels affirmance. The district court's factual findings are firmly supported by the record,

---

[9] On appeal, Plaintiffs argue they "should be considered employees under the FLSA when looking to either Pathway alone or to Pathway and XPO as joint employers." Aplts.' Br. at 35 n.10. The district court said it assessed Pathway's liability under the FLSA, not just collectively with XPO, but also "independently as an employer." R. vol. 2 at 1253. But, as Pathway correctly observes, "the district court never analyzed [P]laintiffs' relationship with Pathway *as a separate employer*." Aplees.' Br. at 26 (emphasis added). Indeed, we struggle to see how Pathway alone— that is, outside of a joint employment relationship with XPO—could be considered Plaintiffs' sole employer under the FLSA. *Cf.* 29 U.S.C. § 203(d), (g) (defining "employee" as "any individual employed by an employer" and "[e]mploy" as "to suffer or permit to work"). With XPO out of the case and only Pathway remaining as a defendant, it seems there would have been no basis to engage with the classification analysis under *Baker* had the district court not assumed—as it did here, in Plaintiffs' favor—that Pathway and XPO were joint employers.

18

and we discern no error in its legal conclusion that Plaintiffs were "in business for [themselves]." R. vol. 2 at 1260 (alteration in original) (quoting *Baker*, 137 F.3d at 1443).

### 1. Degree of control

The first *Baker* factor is the degree of control the putative employer exercises over the worker, and whether the "work situation makes it possible to view [the workers] as persons conducting their own businesses." *Baker*, 137 F.3d at 1440 (citation omitted). The district court found this factor favored independent contractor status because the trial evidence "demonstrate[d] a relatively low degree of control exerted by [Pathway] and/or XPO over Plaintiffs." R. vol. 2 at 1254. Plaintiffs advance several challenges to this factual finding, but none is availing.

First, notwithstanding Plaintiffs' contrary assertion, the district court, having assumed a joint employment relationship, did consider the combined influence of Pathway "and/or XPO" in its analysis of the "degree of control" factor—indeed, it expressly stated as much. *Id.*

Second, Plaintiffs marshal trial evidence to show Pathway exerted significant control over critical elements of their daily jobs. Plaintiffs contend, "Pathway controlled who [Plaintiffs] worked for, what loads were assigned to them, and how they maintained their trucks. Under these circumstances, the control factor weighs in favor of finding that [Plaintiffs] were employees." Aplts.' Br. at 41. Plaintiffs seem to challenge the district court's factual finding by urging us to reweigh the evidence. This we cannot do. In applying the clear-error standard, our limited role requires we

19

review the district court's work, not undertake it. *See Anderson*, 470 U.S. at 573 ("In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues de novo." (quotation omitted)).

Third, we reject Plaintiffs' contention that the district court "misread[]" our decision in *Acosta v. Paragon Contractors Corp.*, 884 F.3d at 1235, and thus "applied the wrong legal test for control." Aplts.' Br. at 41. "[W]hen a lower court's factual findings are premised on improper legal standards or on proper ones improperly applied, they are not entitled to the protection of the clearly erroneous standard, but are subject to *de novo* review." *In re Kretzinger*, 103 F.3d 943, 946 (10th Cir. 1996) (quotation omitted). In *Acosta*, we held the degree-of-control factor supported classification of the worker "as an independent contractor rather than an employee." 884 F.3d at 1236 (citation omitted). In so concluding, we affirmed the district court's decision to take "various considerations" into account, "such as [the worker's] independence in setting his own work hours and other conditions and details of his work, the extent of the [putative employer's] supervision of [him], and the degree of [his] ability to work for other employers." *Id.* at 1235 (citations omitted).

Plaintiffs contend the district court misconstrued *Acosta* as defining the control factor only in terms of whether a worker "could set his own hours and determine how best to perform his job within broad parameters." Aplts.' Br. at 41 (quotation omitted). According to Plaintiffs, this interpretation was too narrow, when "the

20

proper control inquiry in [the Tenth] Circuit is broader, and includes (as *Acosta* did) whether the Lease Drivers were 'free to offer their services to third parties.'" *Id.* at 42 (quoting *Dole*, 875 F.2d at 808). We disagree.

*Acosta* stands for the proposition that, when analyzing degree of control under *Baker*, district courts may consider whether putative employees can work for third parties. 884 F.3d at 1235-36. Whether workers may offer their services to third parties is not a dispositive consideration to be addressed in every misclassification case but is generally relevant to the *Baker* analysis, which demands inquiry into the totality of the circumstances. As Pathway correctly observes, the district court did not misunderstand *Acosta* but applied it correctly to the facts here.

Finally, Plaintiffs argue the district court "made clear factual errors" in finding they used their own "business judgment to determine whether to decline loads." Aplts.' Br. at 42 (quotation omitted); *see also* Reply Br. at 17. Plaintiffs also contend the district court "ignor[ed] that [they] in effect could not work for other carriers." Aplts.' Br. at 42. For instance, Plaintiffs point to Plaintiff Zigmund Gutowski who testified if he was offered an XPO load but "didn't like it" and declined the load, "there [were] consequences," such as later "get[ting] lower miles." R. vol. 3 at 679. Mr. Harris testified that Plaintiffs had to secure Pathway's permission before they could drive for another carrier, and that, with one owner-operator, Pathway required the payment of outstanding debts before approving his switch. And if they wanted to drive for a carrier that did not have a "payment direction letter" with Pathway, Plaintiffs had to pay a down payment before driving for that carrier. R. vol. 3 at 909.

According to Plaintiffs, this evidence shows they "had limited discretion" in performing their work, and the district court clearly erred in finding otherwise. Aplts.' Br. at 39.

Even if Plaintiffs have correctly recited the trial evidence, they have not identified reversible error. "Plaintiffs must show more than the viability of their own theory to warrant remand under the clear error standard. They must demonstrate the district court's findings were impermissible." *Obeslo v. Great-W. Life & Annuity Ins. Co.*, 6 F.4th 1135, 1148 (10th Cir. 2021) (citation omitted). Plaintiffs have not carried that heavy burden here.

For example, the record confirms neither Pathway nor XPO decided for Plaintiffs whether they drove alone, as a team, or hired their own employees to help haul freight. Plaintiffs could sign single-person or team leases with Pathway. Under XPO's Contractor Hauling Agreement, Plaintiffs could hire other drivers to help them haul freight. And unlike XPO's company drivers, Plaintiffs were not subject to "forced dispatch."

The record also shows Plaintiffs decided what loads to accept or decline, when and where they would drive, and how much time to take off—all without having to secure the permission of Pathway and/or XPO. For example, Plaintiff Frank Merrill testified that Pathway did not establish a work schedule for him or require him to drive specific routes. *See* R. vol. 3 at 134. Plaintiff Craig Williams testified he could take time off when he wanted and determine if a load would be profitable enough to take or turn down. *See* R. vol. 2 at 1238, vol. 3 at 517-18.

22

Finally, we reject Plaintiffs' contention that the terms of the Equipment Lease Agreement render the district court's degree-of-control findings clearly erroneous. According to Plaintiffs, the Equipment Lease Agreement "vested in Pathway" the power to prevent Plaintiffs from driving for any carrier besides XPO. Aplts.' Br. at 42. "Had the lower court considered the Equipment Lease Agreement," Plaintiffs maintain, "it could not have found that [Plaintiffs'] decision to reject assigned loads came down to business judgment—rather than fear of negative repercussions." *Id.* We are not persuaded.

Recall, on clear-error review, "[w]e view the evidence in the light most favorable to the district court's ruling and must uphold any district court finding that is permissible in light of the evidence." *Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1262 (10th Cir. 2007) (quotation omitted). As Plaintiffs acknowledge, the Lease Agreements permitted drivers to switch carriers. *See* Aplts.' Br. at 42; *see also* Supp. App. at 52; R. vol. 3 at 933. To be sure, the lease terms required Plaintiffs to secure Pathway's permission before making a switch. Plaintiffs argue that having to secure permission tilts the "degree of control" factor in favor of employee status. We disagree. "That the record supports a view of the evidence that is permissible but contrary to the trial court's findings is not sufficient to warrant upsetting the lower court's findings." *Holdeman v. Devine*, 572 F.3d 1190, 1192 (10th Cir. 2009) (citation omitted). In any event, the record shows Pathway never told any driver they could not change carriers. Several Plaintiffs switched carriers while leasing trucks from Pathway.

The trial evidence thus supports the district court's finding that Pathway and XPO exerted "a relatively low degree of control" over critical elements of Plaintiffs' work. Plaintiffs have advanced no availing argument otherwise.

## 2. Opportunity for profit and loss

The second *Baker* factor focuses on the worker's opportunity for profit and loss, including the worker's "control over the essential determinants of profits in a business" and whether they have a "direct share in the success of the business." *Baker*, 137 F.3d at 1440 (quotation omitted). The district court found this factor favored independent contractor status because "Plaintiffs' opportunities for profit or loss were largely within their own control." R. vol. 2 at 1256. We discern no error.

Plaintiffs first contend the district court "applied an incorrect legal test for the [opportunity for] profit or loss" factor. Aplts.' Br. at 46 (emphasis omitted). According to Plaintiffs, the sole consideration in a court's legal analysis of the second *Baker* factor is whether opportunities for profit or loss depended on the worker's own "*managerial skill*—an analysis the lower court did not perform." *Id.* at 47. Plaintiffs understand "managerial skill" to mean the use of their own initiative to realize profits from their work. *Id.* at 45-46. They appear to contend their jobs required no "managerial skill" because profit and loss "was primarily determined by their ability to drive more miles—but not too many more miles—more efficiently." *Id.* at 46.

Pathway argues this legal argument has been forfeited because Pathway failed to raise it before the district court. Aplees.' Br. at 37. We agree.[10] Even if preserved, the argument is unavailing. As Pathway correctly observes, our precedent "does not demand a singular focus on managerial skills to the exclusion of all other considerations in assessing the opportunity for profit and loss." *Id.* (citations omitted). For instance, in analyzing the "opportunity for profit and loss" factor, a district court may consider—as the district court properly did here—whether workers "have [an] opportunity to experience a loss on the job." *Baker*, 137 F.3d at 1441; *see also id.* (concluding district court's factual finding that workers were employees was not clearly erroneous in part because "there is absolutely no risk of loss on plaintiffs' part"); *Johnson v. Unified Gov't of Wyandotte Cnty.*, 371 F.3d 723, 730 (10th Cir. 2004) ("Did the plaintiffs have the opportunity for profit or loss? The plaintiffs could

---

[10] According to Pathway, Plaintiffs did not argue below that the "sole relevant consideration" under this *Baker* factor is "whether the worker needed managerial skill." Aplees.' Br. at 37. In contesting forfeiture, Plaintiffs point to their post-trial Revised Proposed Findings of Fact and Conclusions of Law, *see* Reply Br. at 22, where they asserted: "Plaintiffs' opportunity for profit and loss was not dictated by their own initiative and work ethic, but rather, [by XPO's] dispatch schedule . . . and how much Pathway [was] deducting from Plaintiffs' pay," R. vol. 2 at 931. We agree with Pathway that Plaintiffs have not preserved their appellate argument that, as a legal matter, our precedent requires a district court to consider "whether realizing profit [for purposes of the *Baker* analysis] involved managerial skill." Aplts.' Br. at 47 (emphasis removed); *see also Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) ("[I]f the [legal] theory simply wasn't raised before the district court, we usually hold it forfeited.") (citations omitted)). And we will not entertain Plaintiffs' forfeited argument because, as Pathway also observes, Plaintiffs have not attempted to show plain error on appeal. *See id.* ("[W]e will reverse on the basis of a legal theory not previously presented to the district court . . . . [but] requir[e] a litigant to show the four elements of plain error." (citations omitted)).

not have lost money from their efforts for the Housing Authority. Certainly, then, their circumstances differed from those of some independent contractors.").

To the extent Plaintiffs contend the district court's factual findings on the "opportunity for profit and loss" factor are clearly erroneous, we are not persuaded. Plaintiffs maintain they did not depend on their "managerial skills" to realize profits, and their success depended on what loads XPO offered them. Aplts.' Br. at 44-45. However, as Pathway observes, the district court found Plaintiffs, unlike XPO's company drivers, were exposed to a risk of monetary loss based on the fuel efficiency of their loads. Rates of pay differed between company drivers and owner-operators, and Plaintiffs were responsible for their own trucks' maintenance to turn profits. Their decisions whether to drive in teams, and what routes to take when driving, also factored into whether they profited as owner-operators. And Plaintiffs who completed their leases "could earn substantially more" than their peers. R. vol. 2 at 1255. At bottom, ample record evidence supports the district court's finding that the "opportunity for profit and loss" factor favored independent contractor status. Plaintiffs have not established clear error.

### 3. Investment in the business

The third *Baker* factor considers the worker's investment in the business. *Baker*, 137 F.3d at 1440. The district court found this "investment in the business" factor supported independent contractor status because Plaintiffs "substantially invested in their chosen business" of long-haul trucking. R. vol. 2 at 1256.

26

Plaintiffs urge reversal, contending the district court erred by looking at Plaintiffs' "investments in a vacuum, not in comparison to Pathway's own investments." Aplts.' Br. at 48 (citation omitted). Pathway argues Plaintiffs also have forfeited this legal argument by failing to raise it below. Aplees.' Br. at 40. Again, we agree with Pathway.

On appeal, Plaintiffs correctly explain that, in evaluating the "investment in the business" factor, courts compare an employer's investments with the worker's investments. Aplts.' Br. at 48; *see also Acosta*, 884 F.3d at 1236 ("To analyze this factor, we compare the investments of the worker and the alleged employer." (citing *Baker*, 137 F.3d at 1442)). In making this evaluation, a trial court must consider a worker's "large capital expenditures." *Acosta*, 884 F.3d at 1236 (quotation omitted).[11] But in the district court, Plaintiffs did not argue, as they do now, that the district court had to compare Plaintiffs' investments in the business to Pathway's investments in its business. Aplts.' Br. at 48-50. *But see* R. vol. 2 at 932. Plaintiffs have therefore failed to preserve their appellate argument. *See Richison*, 634 F.3d at 1128.

Even if preserved, the argument is unavailing. According to Plaintiffs, Pathway's investments in its fleet of trucks, employees' salaries, and leased office space—Pathway's overall business—were comparatively greater than Plaintiffs' investments in their trucks. *See* Aplts.' Br. at 49-50. Even if we assume Pathway incurred expenses beyond those related to leasing trucks, a comparison of these

---

[11] Plaintiffs do not argue the district court erred in finding their leases and work-related expenses were relevant investments under this factor.

investments to Plaintiffs' investments does not tip the scale in favor of employee status.

The district court found Plaintiffs not only incurred lease and truck maintenance expenses but also paid business-related taxes. Some Plaintiffs established their own companies. Indeed, Plaintiff Merrill's lease term extended for 40 months with a monthly rental rate of $2,250.00, a total of $90,000, and included an advance rental payment along with security deposit fees. Supp. App. at 51. Other Plaintiffs paid over $90,000 to Pathway during their lease terms. R. vol. 3 at 774, 840. The record supports the district court's finding that Plaintiffs made significant personal investments in their trucks and truck repair and maintenance. *See Sanchez v. State of Colorado*, 97 F.3d 1303, 1309 (10th Cir. 1996) ("[W]e shall not disturb [a factual] finding unless there is no evidence in the record to support it."). And, as the district court found, Plaintiffs' non-negligible investments in their businesses and payment of related expenses indicate they were "in business for themselves." *Baker*, 137 F.3d at 1443 (citations omitted).

## 4. Permanency of working relationship

The fourth *Baker* factor considers the permanence of the working relationship. *Baker*, 137 F.3d at 1440. This factor favors employee status where "characteristics of [workers'] employment are clearly due to the intrinsic nature of [their] work rather than any *choice or decision* on the part of [the workers]." *Id.* at 1442 (emphasis added). The district court found that the "permanence of the working relationship"

28

factor "weighs slightly in favor of a finding of independent contractor status." R. vol. 2 at 1257.

Plaintiffs do not seem to challenge the district court's permanency findings as clearly erroneous. Rather, they argue the permanency factor favors employee status because some Plaintiffs were indebted to Pathway after taking out loans documented by Pathway's promissory notes. The indebtedness created by these loans, Plaintiffs insist, demonstrates permanency in their working relationship with Pathway. Aplts.' Br. at 52-53. Even if we found Plaintiffs' contention persuasive, that would not be a legitimate basis for reversal. *See Anderson*, 470 U.S. at 573-74 ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.").

In any event, Plaintiffs' position is not supported by the record. The district court found Pathway offered Plaintiffs loans to cover repair costs for which Plaintiffs "had responsibility under [their] leases." R. vol. 2 at 1251. Pathway issued promissory notes to Plaintiffs for any necessary truck repairs. Many drivers received little take-home pay after securing loans from Pathway and making payments on their promissory notes. Even so, the record makes clear Plaintiffs' indebtedness resulted from their contractual lease obligations to maintain their trucks, and was not "due to the intrinsic nature" of long-haul truck driving. *Baker*, 137 F.3d at 1442. We thus discern no clear error in the district court's findings that, given the impermanence of the working relationship, this factor did not support employee status.

**5. Degree of skill required to perform the work**

The fifth *Baker* factor considers the degree of skill required to perform the work. *See Baker*, 137 F.3d at 1440. The district court found this "degree of skill" factor "weigh[ed] slightly in favor of a finding of independent contractor status" because "certain additional skills were required to perform Plaintiffs' work, as compared to the skills required for company drivers." R. vol. 2 at 1258-59. According to the district court, "Many of the work duties performed by owner-operators were the same as those performed by company drivers." *Id.* at 1258. Pathway concedes as much. *See* Aplees.' Br. at 44. However, the district court found, "in addition to the required skills both company drivers and owner-operators possessed [for] driving commercial trucks," Plaintiffs also needed skills like "business acumen and financial proficiency to be profitable" as owner-operators. R. vol. 2 at 1258.

On appeal, Plaintiffs contend the district court committed legal error by focusing on "the degree of skill required to *profit* from the job" as owner-operators when the proper focus should have been on "the degree of skill required to *perform* the job" of long-haul truck driving. Aplts.' Br. at 53. We agree.

*Baker* teaches that district courts must examine what, if any, specialized skills are required to perform the work for the employer—and not, as the district court did here, the skills needed for the worker to independently profit from the work. *See Baker*, 137 F.3d at 1443 (determining district court's finding that the "degree of skill" factor favored employee status was not clearly erroneous because "plaintiffs

are highly skilled but they did not exercise those skills in any independent fashion in *their employment* with [defendant-appellant]." (emphasis added)); *see also Acosta*, 884 F.3d at 1237 (finding fifth *Baker* factor favored employee status where worker provided testimony about his job duties and his employer "d[id] not identify any specialized skills needed for the[] tasks"); *Doty v. Elias*, 733 F.2d 720, 723 (10th Cir. 1984) (affirming district court's conclusion that waiters and waitresses were employees when the job of waiting tables "did not require any specialized skills"); *Johnson*, 371 F.3d at 730 ("As to the degree of skill involved in the *actual labors*, the officers who served as security guards had been trained by the police department and did not need further training." (emphasis added)).

Here, the fifth *Baker* factor looks to what specialized skills Plaintiffs needed to perform the work of long-haul commercial truck driving for Pathway and/or XPO. *See Baker*, 137 F.3d at 1443; *see also Acosta*, 884 F.3d at 1237. The district court found Plaintiffs, as owner-operators, required the same skills to haul freight as XPO's company drivers. The district court's finding that Plaintiffs needed "additional skills . . . to perform [their] work," R. vol. 2 at 1529, was based on a mistaken impression of applicable legal principles and therefore is "not entitled to the protection of the clearly erroneous standard," *In re Kretzinger*, 103 F.3d at 946 (quotation omitted); *see also Sanchez*, 97 F.3d at 1309 ("However formidable a standard, [clear error] is not insurmountable . . . for it 'does not inhibit an appellate court's power to correct errors of law, including those that may infect a so-called mixed finding of law and

31

fact, or a finding of fact that is predicated on a misunderstanding of the governing rule of law.'" (quotation and internal citation omitted)).

However, "[n]one of the [*Baker*] factors alone is dispositive" because the district court must employ "a totality-of-the-circumstances approach" in resolving the ultimate classification issue. *Baker*, 137 F.3d at 1441 (citation omitted). We thus proceed in our review of the district court's findings under the final *Baker* factor.

## 6. Integral part of the business

The sixth *Baker* factor considers the extent to which an individual's work is integral to the putative employer's business. *See Baker*, 137 F.3d at 1440. This "integral to the business" factor "turns 'on whether workers' services are a necessary component of the [putative employer's] business.'" *Acosta*, 884 F.3d at 1237 (quoting *Baker*, 137 F.3d at 1443). The district court found the factor was "neutral" because "[n]either party presented adequate evidence regarding this factor." R. vol. 2 at 1259. The district court reasoned, "On the one hand, it [was] obvious that Defendant Pathway could not remain in business without Plaintiffs performing the hauling work for which trucks are required." *Id.* The district court continued: "On the other hand, the actual freight hauling done by Plaintiffs was performed for XPO, and no work was performed directly for Pathway beyond the requirements necessary [for Plaintiffs] to fulfill [their] lease obligations." *Id.*

Recall, Plaintiffs contend that by skipping the joint employment analysis under *Hall-Salinas*, the district court gave insufficient attention to the relationship between Pathway and XPO in analyzing this *Baker* factor. Had the district court "conducted

the joint employer test first," Plaintiffs contend, then the court "would have recognized that Pathway and XPO's *combined* business, truck leasing and freight hauling, could not exist without [Plaintiffs]." *Id.* (emphasis added). Plaintiffs' point is well taken.

That the district court found the "integral to the business" factor neutral suggests it may have considered Pathway individually, and not Pathway *and* XPO collectively, as the putative employer when assessing whether Plaintiffs' services were a "necessary component" of the business. As to Pathway alone, we discern no clear error in the district court's factual finding. *See Hayes v. SkyWest Airlines, Inc.*, 12 F.4th 1186, 1194 (10th Cir. 2021) ("A fact finding is clearly erroneous only where it wholly lacks support in the record." (citing *Foreclosure Connection*, 903 F.3d at 1134)).

But because the district court assumed a joint employment relationship at the outset, it had to consider, for purposes of the classification analysis, whether Plaintiffs' work was integral to the business of the combined entity. The trial evidence showed XPO is a freight hauling business. As Plaintiffs properly assert, and Pathway does not seriously dispute, when XPO is added to the mix as a joint employer, Plaintiffs' work—long-haul truck driving—was integral to the business of Pathway and XPO.[12] Therefore, the district court's finding that, as to the combined

---

[12] Notably, in the district court, Pathway conceded this factor favored employee status, and on appeal, Pathway acknowledges that "[f]actoring in [P]laintiffs' relationship with XPO improves [Plaintiffs'] position slightly." Aplees.' Br. at 46.

entity, the "integral to the business" factor is merely "neutral" is not "permissible in light of the evidence." *Weyerhaeuser Co.*, 510 F.3d at 1262 (quotation omitted).

Even assuming the "integral to the business" factor is not neutral, but favors employee status when joint employment is assumed, we will not reverse the district court's ultimate classification decision unless it fails to withstand scrutiny under de novo review. Here, we discern no reversible error.

\* \* \*

*Baker* requires the district court to assess classification under the FLSA by considering the six-factor "economic realities" test under the totality of the circumstances. *Baker*, 137 F.3d at 1440-41. We review this ultimate classification decision de novo. *Id.* at 1441 (citation omitted). The district court entered the classification inquiry assuming Pathway and XPO were Plaintiffs' joint employers. "Considering the totality of the circumstances," the district court found Plaintiffs "acted with a 'degree of independence' which 'set them apart from what one would consider normal employee status.'" R. vol. 2 at 1259-60 (alteration omitted) (quoting *Baker*, 137 F.3d at 1441). The district court concluded "Plaintiffs were 'in business for [themselves],'" and therefore they were independent contractors, not employees, which "preclude[d] them from coverage under the FLSA." *Id.* at 1260 (alteration in original) (quoting *Baker*, 137 F.3d at 1443).

Pathway urges affirmance, contending the district court's ultimate legal conclusion that Plaintiffs were independent contractors "flowed naturally" from its factual findings. Aplees.' Br. at 47 (citing R. vol. 2 at 1260). We agree.

34

Notwithstanding the district court's legal error in analyzing the "degree of skill" factor and its failure to consider Pathway and XPO collectively when analyzing the "integral to the business" factor, we conclude the district court properly determined, based on the totality of the circumstances, that Plaintiffs were independent contractors "in business for themselves." *Baker*, 137 F.3d at 1443 (citations omitted).

## CONCLUSION

The district court's judgment is AFFIRMED.

Entered for the Court

Veronica S. Rossman
Circuit Judge